IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALFERIS COBY #02238015, | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | A-23-CV-104-RP |
| | § | |
| COURT OF CRIMINAL APPEALS, | § | |
| KIM OGG, COMMISSIONERS COURT | § | |
| OF HARRIS COUNTY, CITY OF | § | |
| HOUSTON POLICE DEPARTMENT, | § | |
| OFFICER JOSE CORONADO, | § | |
| OFFICER RICHARD RODRIGUEZ, | § | |
| OFFICER MICHAEL BURROW, | § | |
| OFFICER RUSSELL GRAY, | § | |
| ED GONZALEZ, SUPREME COURT | § | |
| OF TEXAS, INGER H. CHANDLER, | § | |
| BRIAN FISCHER, DOUGLAS BRADLEY | § | |
| LOPER, TEXAS PENAL CODE, | § | |
| SHARON KELLER, and | § | |
| NATHAN HECHT, | § | |
|     DEFENDANTS. | § | |

**O R D E R**

    Before the Court is Plaintiff Alferis Coby's complaint filed pursuant to 42 U.S.C. § 1983 and the Texas Bill of Rights. Plaintiff also invokes 28 U.S.C. §§ 1331, 1343, 1651, 2201, 2202, 2283, and 2284. Plaintiff's complaint was removed to federal court. Most of the defendants move to dismiss Plaintiff's complaint. After these defendants moved to dismiss, Plaintiff filed a "Voluntary More Definite Statement" and an "Additional and Verified More Definite Statement." Defendants Harris County Commissioner's Court and Sheriff Gonzalez move to dismiss the more definite statement to the extent the more definite statement is considered an amended complaint. Defendants Keller and Hecht, on the other hand, filed an amended motion to dismiss. After consideration of the

pleadings and applicable law, Plaintiff's complaint, as amended by his more definite statements, is dismissed.

## I.  BACKGROUND

Plaintiff Alferis Coby is an inmate currently incarcerated in the Robertson Unit of the Texas Department of Criminal Justice - Correctional Institutions Division. Plaintiff was indicted for capital murder. He pleaded not guilty. In 2018, a jury found him guilty of the lesser-included offense of felony murder. Plaintiff was sentenced to 70 years' imprisonment. *Coby v. State*, No. 01-18-00991-CR, 2020 WL 3867280 (Tex. App. – Houston [1st Dist.], July 9, 2020, no pet. ). Later in 2018, Plaintiff pleaded guilty to and was convicted of aggravated robbery with a deadly weapon and sentenced to 45 years.

Plaintiff sues (1) the Texas Court of Criminal Appeals, (2) Kim Ogg, District Attorney of Harris County, Texas, (3) the Commissioner's Court of Harris County, (4) the City of Houston Police Department in its corporate name City of Houston, (5) Jose Coronado, Houston Police Officer, (6) Richard Rodriguez, Houston Police Sergeant, (7) Michael Burrow, Houston Police Sergeant, (8) Russell Gray, Houston Police Sergeant, (9) Ed Gonzalez, Harris County Sheriff, (10) the Texas Supreme Court, (11) Inger H. Chandler, Attorney at Law, (12) Brian Fischer, Attorney at Law, (13) Douglas Bradley Loper, Attorney at Law, (14) the Texas Penal Code, (15) Sharon Keller, Presiding Judge of the Court of Criminal Appeals of Texas, and (16) Nathan Hecht, Chief Justice of the Supreme Court of Texas. Plaintiff seeks monetary damages, a declaratory judgment, and injunctive relief.

In Plaintiff's first claim for relief he states, in Texas, accused defendants in criminal prosecutions, unless waived, have the absolute right to be tried only for criminal conduct that has

been found by a grand jury presented in an indictment. Plaintiff argues this includes conduct described under Texas Penal Code section 7.02, which holds someone criminally responsible for the acts of another. Plaintiff maintains the grand jury did not charge him in his indictment with any criminal accusations described under section 7.02.

In his second claim for relief Plaintiff states he was 15 at the time of his arrest. According to Plaintiff, Defendant Fischer accepted appointment as Plaintiff's guardian during Plaintiff's juvenile certification proceeding. Plaintiff contends Fischer failed to litigate a Fourth Amendment claim in a civil action and in a motion to suppress and instead conspired with city, county, and state officials. Plaintiff complains Fischer repeatedly failed to turn over his client file.

Plaintiff also alleges Houston police officers, including Defendants Coronado, Rodriguez, Burrow, and Gray, at the direction of Harris County District Attorney Kim Ogg, "take and snatch juveniles up off the streets simply because they have the description of a suspect then take the juvenile in the Houston Adult Homicide Processing Division and to a magistrate without absolutely no charges of any kind being filed nor charges read to." Plaintiff asserts a magistrate gives a *Miranda* warning, the juvenile is taken into Defendant Rodriguez's office without the police ever contacting the juvenile's parents or guardian, and the juvenile is interrogated.

Plantiff contends Defendant Fischer deliberately failed to have the juvenile court's judge inform Plaintiff that the certification order was immediately appealable and did not explain the order was immediately appealable. He also faults Fischer for failing to inform Plaintiff he had the right to sue the Houston police officers, the City of Houston, and Kim Ogg for false arrest or illegal seizure. He further faults Fischer for failing to request an indigency hearing, file a notice of appeal,

and secure for the Plaintiff a free copy of the clerk's records, recorder's records, and appointment of counsel for appeal.

In his third claim for relief Plaintiff alleges he was snatched up off the streets because he looked like a suspect with the intention of getting Plaintiff to make a statement. He alleges notice of the police's actions was not promptly provided to Plaintiff's parent, guardian, or custodian. Plaintiff states he was taken to the adult homicide division where his recorded statement was taken without giving Plaintiff any *Miranda* warnings, and officials fraudulently attempted to conceal this.

Plaintiff claims after the void process and illegal procedures, the Harris County Sheriff took Plaintiff into custody and housed him in administrative segregation where Plaintiff was confined to his cell 24 hours each day, not given cleaning supplies, not allowed to attend religious services, and forced to sleep and eat in the cell around human waste and other unpleasant odors. He claims he suffered from headaches and his cell was infested with insects.

In his fourth claim for relief Plaintiff alleges the juvenile certification process is wholly unconstitutional, specifically in Harris County. Relatedly, in his fifth claim for relief Plaintiff alleges waiving jurisdiction in Texas juvenile court and prosecuting a juvenile in adult court is unconstitutional.

In his sixth claim Plaintiff contends Justice Hecht is responsible for monitoring the practice of the Harris County District Attorney, the Houston Police Department, the juvenile justice systems, the magistrates' offices, and juvenile courts.

In his final claim Plaintiff asserts Defendants Loper, Fischer, and Chandler all represented him and were aware of the claims presented in his complaint but took no action. He alleges his attorneys conspired with the State to violate Plaintiff's rights.

Defendants Ogg and Chandler have not entered appearances in this case and there is no evidence they have been properly served. Not surprisingly, the Defendant the Texas Penal Code has not been served and has not answered. Defendants Fischer and Loper filed answers but did not file motions to dismiss. The remainder of the defendants move to dismiss Plaintiff's complaint. They primarily argue Plaintiff's claims are either barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) or are time-barred. They also argue Plaintiff failed to state a claim upon which relief may be granted for various reasons or they are immune from suit.

## II. LEGAL STANDARDS

A.  Standard Under 28 U.S.C. § 1915(e)

An *in forma pauperis* proceeding may be dismissed *sua sponte* under 28 U.S.C. § 1915(e) if the court determines the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from suit. A dismissal for frivolousness or maliciousness may occur at any time, before or after service of process and before or after the defendant's answer. *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

When reviewing a plaintiff's complaint, the court must construe plaintiff's allegations as liberally as possible. *Haines v. Kerner*, 404 U.S. 519 (1972). However, the plaintiff's pro se status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

B.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(1). Federal district courts are courts of limited

jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

C.   Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338.

### III. ANALYSIS

A.  <u>Sovereign Immunity</u>

The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. *Green v. State Bar of Tex.*, 27 F.3d 1083, 1087 (5th Cir. 1994).

Moreover, federal district courts do not have jurisdiction to issue a writ of mandamus against a state actor or agency. *See generally Moye v. Clerk, DeKalb County Superior Court*, 474 F.2d 1275 (5th Cir. 1973); *accord, Noble v. Cain*, 123 Fed. Appx. 151 (5th Cir. Feb.16, 2005) (available at 2005 WL 361818) (citing *Moye* to hold federal mandamus relief is not available to direct state officials in the performance of their duties). As such, mandamus relief is not available to compel or direct the actions of state officials or other non-federal employees. *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988); *Gurley v. Superior Court of Mecklenburg Cnty.*, 411 F.2d 586, 587 (4th Cir. 1969).

To the extent Plaintiff sues the Court of Criminal Appeals, the Texas Supreme Court, and Defendants Keller and Hecht in their official capacities the Court lacks jurisdiction.

B.     Entities Not Capable of Being Sued

The Houston Police Department, the Harris County Commissioner's Court, and the Texas Penal Code are not legal entities capable of being sued. *See Guidry v. Jefferson County Detention Center*, 868 F. Supp. 189, 191 (E.D. Tex. 1994) (holding that the Jefferson County Detention Center is not a legal entity subject to suit); *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991) (holding that police and sheriff's departments are governmental subdivisions without capacity for independent legal action). Accordingly, Plaintiff's claims against the Houston Police Department, the Harris County Commissioner's Court, and the Texas Penal Code are dismissed.

Construing Plaintiff's claims liberally, the Court will consider Plaintiff's claims made against the Houston Police Department as if they are brought against the City of Houston and Plaintiff's claims made against the Harris County Commissioner's Court as if they are brought against Harris County. As explained later, Plaintiff's claims are barred.

C. State Actors

Plaintiff's attorneys are not state actors. Section 1983 provides a remedy for the deprivation of federal rights "under color of state law." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005) (internal quotation marks omitted). Private individuals are not generally considered to be state actors for the purpose of § 1983, but "a private individual may act under color of law in certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors." *Id.*

Although Plaintiff alleges his attorneys conspired with the city, county, and state, his claims are conclusory and fail to show they were willful participants in joint action with the state. Accordingly, he fails to state claims against them for the violation of his constitutional rights. Alternatively, as explained below, his claims are barred.

D. Barred

Plaintiff's claims that necessarily imply the invalidity of his convictions are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) because Plaintiff's convictions have not been overturned or otherwise terminated in Plaintiff's favor. Plaintiff's claims that do not necessarily imply the invalidity of his convictions are barred by the applicable statute of limitations.

1. *Heck*-Barred

On direct appeal of his felony murder conviction Plaintiff challenged the sufficiency of the evidence to support his conviction and argued the trial court erred by denying his motion to suppress. *Coby v. State*, No. 01-18-00991-CR, 2020 WL3867280 (Tex. App. – Houston [1st Dist.], July 9, 2020, no pet. ). The appellate court described Plaintiff's crime as follows:

On March 12, 2015, Juan Carlos Ramirez was shot and killed during a robbery in the parking lot of a bar in downtown Houston. Ramirez's truck was stolen during the incident. Police found Ramirez's body in the parking lot, with a cell phone in his hand.

Ramirez and his friend Shu-Tin Chloe Ward had gone to the bar to see a friend perform. After the performance, they walked outside to Ramirez's pickup truck. Ward got in the truck to make a phone call, and Ramirez stood outside. Before Ward could complete the call, she heard a commotion near the truck, including voices she did not recognize. She heard Ramirez say that he would not give up his keys and that he was going to call the police. Ward attempted to lock the car and tried to call police. Before she could complete the call, someone got into the front seat of the truck, holding a gun in his hand. He lunged at her, put the gun to her head, and threatened to shoot her if she did not give him her belongings. Ward threw her phone onto the front passenger side floorboard and ran out of the truck. As she ran toward the bar for help, she heard Ramirez yell that the police were on their way. She also heard a gunshot.

Law enforcement developed a description of two suspects. They discovered that Ward's cell phone remained active and traced it to a duplex in Houston. Officers performed surveillance on the location and observed Ramirez's truck being driven by someone who matched the description of one of the suspects. After following the car and a brief chase, they arrested Coby's codefendant. Later, they approached Coby when he left the duplex. Coby fled and crawled under a nearby house. He eventually surrendered when threatened with release of a police dog.

After he was arrested, law enforcement realized that Coby was 15 years old. They took him to a magistrate judge for statutory warnings and then to the police headquarters downtown. The same detective interviewed Coby and his codefendant separately. Simultaneously, another officer attempted to notify Coby's guardian, but Coby did not give officers a working phone number for his grandmother, and searches did not recover phone numbers for her.

When interviewed, Coby confessed to the crime. He admitted that he wanted money to buy something for his girlfriend so he and his codefendant went downtown intending to rob someone. They walked by a bar and went into the parking lot. Coby held a gun to a man while his codefendant grabbed the man's car keys, but the man grabbed for the gun. The man started chasing his codefendant while Coby got in the truck and grabbed a phone belonging to the woman inside. She got out of the car and ran. Coby admitted that he shot the man.

About a month after the murder, Ward identified Coby in a photo array as the person who got into the truck. Ward also identified her cellphone, which was recovered in

>the front passenger seat of the truck. Forensic searching of the phone showed that two contacts had been added after the incident: "Smiley" and "Dino." Ward did not know anyone by either name. Police knew that Coby used the nickname "Smiley." Calls were made from the phone to "Smiley" on six occasions in the day after the murder. The phone's browsing history during that time also included "Ford car on Houston news" and "man shot and killed during carjacking."

*Id.* at *1-2.

In determining whether the evidence was sufficient to support Plaintiff's conviction the appellate court indicated and held:

>The jury heard sufficient evidence to conclude that Coby committed an act clearly dangerous to human life in furtherance of the felony offense of robbery. See TEX. PENAL CODE § 19.02(b)(3) (felony murder). Ward testified that, in the early morning hours, she and Ramirez were in the parking lot behind a nightclub in midtown Houston. She got in the backseat of Ramirez's truck to make a phone call. While she was in the back seat, she heard a commotion outside that included Ramirez and a voice she did not know. She tried to lock the truck and call 911, but someone got into the front seat of the truck, pointed a gun at her, and demanded her belongings. She threw her phone into the front passenger side floorboard, got out of the truck, and ran. While she was running, she heard a gunshot. She stayed at the scene when law enforcement responded, and later told them that when she called her cell phone, someone answered. Ward later identified Coby as one of the robbers.

>Law enforcement found Ramirez dead on the ground, holding his cell phone. Police located Ramirez's truck by tracking Ward's phone. The truck was found near Coby and his codefendant, and the phone was inside the truck. Officers observed the truck and surrounding area. When they approached Coby, he ran under a house. Once threatened that a police dog would come after him under the house, Coby surrendered.

>Ward's phone was taken into evidence. When they searched the phone, officers discovered Coby's contact information had been entered into the phone shortly after it was stolen, and several calls had been placed to Coby after the murder. They also discovered searches in the browser history for "Ford car on Houston news" and "man shot and killed during carjacking."

>A medical examiner testified that Ramirez died from a gunshot to the heart and opined that the person who shot him was at most three feet away.

> The jury watched a recording of Coby's custodial statement. He admitted that he and his codefendant went to downtown Houston with the intention of robbing someone. He also admitted that he shot Ramirez. The video included footage of Coby using an officer's phone to call family and friends. During the phone calls, Coby admitted that he had made bad choices and that he "popped" a guy who died shortly after.
>
> The jury heard sufficient evidence to convict Coby of felony murder. In doing so, the jury could consider the law of parties. The law of parties establishes that a person is criminally responsible for an offense committed by the conduct of another if he aids, encourages, or attempts to aid another person in committing the offense. TEX. PENAL CODE § 7.02(a)(2). The jury heard evidence that Ramirez was shot by Coby or his codefendant when they tried to rob him and steal his car. We hold that the evidence is sufficient to support a conviction for felony murder.

*Id.* at *3.

On appeal Plaintiff also argued the trial court improperly overruled his motion to suppress and should not have admitted his statement for three reasons: (1) the interviewing officer did not notify Coby's grandmother; (2) Coby did not expressly waive his statutory rights by using the word "waiver" or by explicitly agreeing that he "waived his rights"; and (3) the recording device broke the recording of the statutory warnings given by the magistrate into a separate file from the statement Coby gave officers on the same digital recorder. *Id.* at *4. The appellate court overruled Plaintiff's claim and explained:

> The [trial] court held a hearing on his motion. Officer Burrow testified that he interviewed Coby after the Houston Police Department took him into custody. Before taking Coby's statement, Officer Burrow took him before a magistrate to receive the statutorily required juvenile warnings. He took a digital audio recorder into the judge's chambers, put the timestamp information on the recording, and left Coby alone in the room with the judge to receive his warnings. The digital recorder captured the warnings the judge gave to Coby. Officer Burrow testified that he later listened to the judge's discussion with Coby and verified that the warnings were given. After Coby received the warnings from the judge, he was taken to the juvenile processing office of the Houston Police Department Homicide Division.
>
> While Officer Burrow interviewed Coby's codefendant and then Coby, Officer Rodriguez attempted to contact Coby's grandmother. He searched databases and

called the best number he could find, but she did not answer. The following day, another officer with the Houston Police Department Juvenile Division reached her.

Officer Burrow recorded his interview with Coby on the same digital recorder, and the recorder created two files. Both were timestamped showing the warnings occurred first, followed by the statement. Officer Burrow explained that when someone presses stop on the digital recorder, it automatically creates a new file, resulting in two files – the warnings and the interview.

Officer Burrow interviewed Coby for about thirty minutes, ending at 9:00 p.m. Coby then asked to call his girlfriend. Officer Burrow let Coby make the phone call on his city-issued cell phone and left the room. Coby spoke to his girlfriend, his grandmother, and at least two other people during the call. Video recording captured him making the phone call, and the judge viewed it during the motion-to-suppress hearing. During the call, Coby told his grandmother that he was taken by police to the Homicide Division. He told her that he had been making bad decisions, and he had been caught. He admitted to her that he had been out the night before near a bar downtown with his codefendant. He explained that they tried to rob a man, but the man fought back, and Coby "popped him in the chest and like five minutes later he died." Coby asked her to bring his girlfriend to court so that he could see her. He told someone else on the call that he had been caught for capital murder. He also said "that just how it goes down in the jungle."

Coby testified at the hearing, stating that he did not pay attention to the magistrate judge's warnings. He said he signed the paper that was put in front of him and claimed not to understand the warnings or that he was waiving his rights. He also testified that he only wanted to get the statement out of the way so that he could go to sleep. He said that if his grandmother told him he was under investigation for murder, he would not have given a statement.

Coby admitted that he did ask the judge some questions and that he responded to the judge's warnings. He also admitted that he talked to his grandmother on the phone, and that she first visited him three days later.

The trial court reviewed the video of the interrogation and the audio of the magistrate judge's warnings. The court denied the motion to suppress and made findings of fact and conclusions of law. The court found Officer Burrow's testimony credible and Coby's testimony not credible. The court found that Coby was taken to a magistrate judge without unnecessary delay and that he received warnings that complied with the Family Code's provisions requiring that the defendant be alone with a magistrate and that the warnings be recorded. The warnings were completely explained to Coby in a manner that ensured he understood him, and Coby told the magistrate that he understood. Coby was repeatedly told that he did not have to talk to officers.

> Although he did not use the word "waive," it was clear to the trial court that he chose to waive his rights.
>
> The court found that the warnings were recorded using the same recorder that was used to record his statement, but the recording was not necessarily captured on the same drive. The court stated that it was unclear what device, such as a USB thumb drive, was used to capture the warnings, but that the recordings were timestamped, and the court could determine that Coby received the warnings before he gave a statement. The court found that the process substantially complied with the Family Code.
>
> The court found that Coby was taken to the homicide division of the Houston Police Department, which is a designated juvenile processing office[]. Officer Burrow interviewed Coby, and Coby initiated conversation and spoke voluntarily. While the interview was happening, another officer attempted to contact Coby's grandmother but was unsuccessful.
>
> The findings include that Coby was given water and allowed to make phone calls from the officer's cell phone. He appeared to contact his grandmother and advise her that he had been arrested. His grandmother was notified by police the next day.
>
> The court found that Coby's statement was freely and voluntarily given after receiving the statutory warning from a magistrate judge. Coby understood his rights and voluntarily waived them. His statement was given voluntarily without threats or coercion. The court found that the Family Code was complied with in most respects except as it relates to parental notification, but the statement was not automatically inadmissible for failure to promptly notify a guardian. The court found that there was no showing of a causal connection between the lack of guardian notification and Coby's statement. There was no evidence that Coby's grandmother would have gone to the police station if she had been so notified.

*Id.* at *5-6.

The appellate court agreed with the trial court that Coby failed to meet his burden to prove a causal connection between the failure to contact his grandmother and the making of his statement. *Id.* at *7. The court reasoned that given the evidence that Coby was told that he was being investigated for murder or capital murder before he made any inculpatory statements, Coby had not established that his grandmother telling him the same information would have been likely to change

the outcome of his decision. *Id.* The appellate court also determined the totality of the circumstances surrounding the interrogation showed that Coby knowingly, intelligently, and voluntarily waived his rights and that after Coby left the magistrate judge's chambers, he initiated the conversation with Officer Burrow by asking what would likely happen to him. *Id.* The officer responded that it was Coby's decision. *Id.* The officer reminded Coby that the judge had read him his legal warnings. *Id.*

Finally, the appellate court indicated that it need not decide whether the audio recorder's separation of the warning and statement into two files violates section 51.095 because Coby had not shown that he was harmed by the admission of his recorded custodial statement. *Id.* at *8. The court reiterated that Coby admitted to his role in the murder during phone conversations with his family and that physical evidence tied Coby to the murder. *Id.* at *8-9.

In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87.

Plaintiff argues *Heck* does not apply to his claims because he "challenges the void procedures Harris County" utilizes. Specifically, he alleges his constitutional rights were violated because Plaintiff "was denied his right to immediately appeal the Juvenile certification hearing findings and procedures the Juvenile court used." He claims this "immediate right to appeal was hid from [him] by both the juvenile court Judge" and Defendant Fischer. He makes clear that he seeks to be

"reinstated to [his] right to immediate appeal of the certification hearing." He additionally proclaims his innocence.

Despite Plaintiff's assertion that he is only "challeng[ing] the unconstitutional procedures, policies, laws used to reach the conviction," most of Plaintiff's claims challenge his conviction or juvenile certification which led to his conviction as an adult. Those claims are barred because Plaintiff's convictions have not been reversed, expunged, invalidated, or called into question by a federal court's issuance of writ of habeas corpus.

### 2. Time-Barred

The claims that are not barred by *Heck* are time-barred. The statute of limitations for a § 1983 claim is determined by the forum state's limitations period for personal injury torts. *Wallace v. Kato*, 549, U.S. 384, 387 (2007). In Texas, that is two years from the date the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Schaefer v. Gulf Coast Regional Blood Ctr.*, 10 F.3d 327, 331 (5th Cir. 1994). However, federal law determines when a § 1983 cause of action accrues. *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). A cause of action under § 1983 accrues when the aggrieved party knows, or has reason to know of, the injury or damages which form the basis of the action. *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995). The limitations period is tolled until a minor reaches the age eighteen. TEX. CIV. PRAC. & REM. CODE ANN. § 16.001.

Plaintiff's claims stem from Plaintiff's arrest in 2015, his convictions in 2018, and his appeal that concluded in 2020. Plaintiff turned 18 in 2017. Plaintiff attempts to avoid the time bar by claiming equitable estoppel and Defendant Fischer fraudulently concealed his client file. Plaintiff fails. Plaintiff obviously had knowledge of the facts regarding his arrests, indictments, convictions

and all events relating to his criminal charges at the time each took place. Nevertheless, Plaintiff did not execute his complaint until August 16, 2023, after the limitations period expired. Plaintiff alleges no facts to support equitable tolling.

## IV. CONCLUSION

The Court lacks jurisdiction over Plaintiff's claims brought against the Court of Criminal Appeals, the Texas Supreme Court, and Defendants Keller and Hecht in their official capacities. The Houston Police Department, the Harris County Commissioner's Court, and the Texas Penal Code are not legal entities capable of being sued. Plaintiff's attorneys are not state court actors. In addition, Plaintiff's claims that necessarily imply the invalidity of his convictions are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) because Plaintiff's convictions have not been overturned or otherwise terminated in Plaintiff's favor. Plaintiff's claims that do not necessarily imply the invalidity of his convictions are barred by the applicable statute of limitations. As the Court disposes of all of Plaintiff's claims for the foregoing reasons, the Court need not address Defendants' additional grounds for dismissal.

It is therefore **ORDERED** that the Motion to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 4), filed by Defendants Rodriguez, Coronado, Burrow, and Gray, is **GRANTED**.

It is further **ORDERED** that the Motion to Dismiss Pursuant to Rule 12(b) (ECF No. 5), filed by Defendant the City of Houston Police Department, is **GRANTED**.

It is further **ORDERED** that the Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 6), filed by Defendants Keller and Hecht, is **DISMISSED**.

It is further **ORDERED** that the Motion to Dismiss Plaintiff's Original Complaint (ECF No. 8), filed by Defendant Harris County Commissioner's Court, is **GRANTED**.

It is further **ORDERED** that the Motion to Dismiss Plaintiff's Original Complaint (ECF No. 9), filed by Defendant Gonzalez, is **GRANTED**.

It is further **ORDERED** that the Motion to Dismiss Plaintiff's More Definite Statement (ECF No. 25), to the extent the more definite statement is construed as an amended complaint, filed by Defendant Harris County Commissioner's Court, is **GRANTED**.

It is further **ORDERED** that the Motion to Dismiss Plaintiff's More Definite Statement (ECF No. 26), to the extent the more definite statement is construed as an amended complaint, filed by Defendant Gonzalez, is **GRANTED**.

It is further **ORDERED** that the Amended Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 30), filed by Defendants Keller and Hecht, is **GRANTED**.

It is further **ORDERED** that Plaintiff's claims brought against the Court of Criminal Appeals, the Supreme Court of Texas, and Defendants Keller and Hecht in their official capacities are **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction.

It is further **ORDERED** that Plaintiff's claims brought against Defendants the Texas Penal Code, the Houston Police Department, and the Harris County Commissioner's Court are **DISMISSED WITH PREJUDICE** as these defendants are not entities capable of being sued.

It is further **ORDERED** that Plaintiff's claims brought against Defendants Inger H. Chandler, Brian Fischer, and Douglas Bradley Loper, are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e).

It is further **ORDERED** that Plaintiff's claims necessarily challenging the validity of his convictions are **DISMISSED WITH PREJUDICE** to their being asserted again until the *Heck* conditions are met. The remainder of Plaintiff's claims are **DISMISSED WITH PREJUDICE** as time-barred.

**SIGNED** on September 14, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE